Case number 12-7038. Yu-Wei-An Wang, by and through her attorney, in fact, Winston Wing-Yung Huang, appellant, v. New Mighty U.S. Trust, in L. Mr. Startenberg, for the appellant. Mr. Sloan, for the appellees. Let's wait until the courtroom clears. All right. Good morning. Good morning. May it please the Court, Mark Startenberg for the appellants, Dr. Wang and the attorneys. I have room to ask for two minutes for rebuttal. There are two issues before the Court today. The first is the substantive issue of our appeal, which is the dismissal of this case for lack of the per se jurisdiction by the district court. The second issue is the appellant's motion to substitute under Rule 43 the executors of the will of Yeh-lan for these proceedings. That issue, that motion was made, and the special panel reserved that ruling for the merits panel. Turning to the- I don't want to detract or contend with the merits, but on the substitution, do you dispute that if the substitution were made, or if the substitution were made, would these executors have any capacity to alter the ultimate analysis of capacity to bring this lawsuit in the first instance? No. They can't retroactively ratify it, right? I thought, absolutely, I think they can, but I don't think actually that issue is before this Court today. I think the issue is whether under Rule 43- Well, I'm trying to figure out. They have arguments about capacity to have brought this suit in the first instance. Correct. And they say, can't substitute because we've got to figure out that issue in the first instance. And I thought your argument was, look, plug these folks in. That's what the law does. That's what we do with executors. And all those arguments will remain just the same for them to address on capacity. So I'm trying to figure out what your position is. Yeah, my position is that for purposes of this appeal, in order for the appellants to actually make the substantive arguments that we need to make, a dead person can't make those arguments. So the executors, the court-appointed executors, should be the parties for this appeal. And then it can go back to the district court, assuming that they're successful. And the district court can consider the issues of nullity, of whether or not there was capacity initially. All the issues that they have raised below, which they have recycled and raised again. I mean, I think the argument fails. I think the law is clear in this circuit. I get that you think it fails. It's not before us. I don't think it's before you. I don't think it's before you. Capacity is not before us. I'm asking about substitution. I'm trying to make sure. Normally, the substitution is just automatic. It doesn't change anything. I'm trying to get a clear answer. And I think that's correct. It doesn't change anything here or when they go back to district court. I mean, Your Honor, if you think the concern is that we're going to go back to the district court and say, hello, we were substituted before the circuit court under Rule 43. Therefore, all of your capacity arguments are wiped out and your nullity arguments are wiped out. I'm not making that argument. I am sure my adversaries will raise that argument again, as they have a number of times. And we'll continue to make that argument. Do you agree that the substitution doesn't change anything legally? No, I don't think that it does. For purposes of this appeal, I think the substitution is what we're asking for. And I think that those arguments are reserved for them to make below. Turning to the issue that was actually the focus of our appeal beyond their so-called motion to dismiss, I think that this now is a very simple issue in light of the Maracle holding on March 7th of 2016. Because prior to Maracle, there was a split between the circuits. This circuit had not ruled on this particular issue. That is, how to assess the citizenship of a trust for purposes of diversity. The district court looked at the authorities, said that it was a close call, and applied carding to the facts of this case, found that the trust, the defendant here, New Mighty U.S. Trust, was an artificial entity. That's an error. It's not an artificial entity under Maracle. And found that you need to look to all the members of New Mighty U.S. Trust to determine its citizenship. And in this particular case, there are two beneficiaries that are British Virgin Island entities, and it concluded that there was not diversity. However, in light of Maracle, that analysis is incorrect. Because Maracle states very clearly that you need to look at the type of trusted issue. And the court was very clear in going through the issues before Maracle, which involved a real estate investment trust that was a trust that was a creature of Maryland law. It could sue and be sued. It had effectively members that were akin to shareholders. And the court went through the analysis and found that you have to parse out traditional trusts, which are fiduciary relationships on the one hand, and artificial entities. The Maracle exception, I just want to make sure I have your terminology right, do you think the exception that you're advancing now is for, what's the label? Is it common law trust? Is it traditional trust? Is it express trust? What is? Yeah. So the courts. Yeah. And that's correct. It is a functional title. In the District of Columbia, it's a common law trust under the D.C. Code. That's what they're considered. And under the D.C. Code, a common law trust is a fiduciary relationship. It is not a person under the statute. It's excluded from the definition of person. It cannot sue or be sued. A trustee must defend claims against a trust, obligated under the code to defend claims against a trust, and must take all steps to protect and preserve the assets of a trust. So what are the factors? I'm just trying to figure out what the, given that state law and at least state labels can vary, what are the key factors for recognizing that something is a common law, traditional express trust, as opposed to the type of trust that's going to be regulated by a marital? Is it just to have me sued? Is it whether they're trying to be a person? Is it the labeling that state law gives them? I don't think it's a labeling issue. I think the court was careful. That's not. Don't worry about the labeling issue. Just because you slap the word trust on something doesn't make it official trust. Common law, express. Yeah. I think what you're looking at is, is it a trust? There's a rich history of what a traditional trust is. It may have been called a common law trust or a conventional trust. What you're talking about is, it's more like a contract. It's where a party can sit down and declare a trust for the benefit of beneficiaries and appoint a trustee. The state is not involved in this. There's no statutory filing that's required, as it is in the District of Columbia. You cannot sue or be sued. That is an important characteristic. Trusts cannot bring claims. That's the law in this particular, in the District of Columbia. The 2011 case in Madigy, which we cite, which came out after the complaint was filed, makes it very clear that when a plaintiff asks a court to impose judgment against a trust, they are really seeking judgment against the trustee because a trust is merely a description of a relationship between the legal and equitable owners of property. The trust cannot own anything. What if in that contract that parties created, separate and apart from any statute, they said, let's create this trust, let's have this relationship, but let's also say that this trust can either sue or be sued? I don't think that would be a valid trust under the D.C. Code. I think you have to follow the requirements of the Trust Act. There's the Uniform Trust Act and then there's the Statutory Trust Act. If you're going to try to create an entity that can sue or be sued that has those attributes, then you need to follow the D.C. Code, and there's no claim here that that's what was done with this trust. This was a simple lawyer sitting in an office writing out a declaration of trust. Well, the Uniform Trust Act has been adopted in D.C. I don't know how many states have adopted the Uniform Trust Act, but the Statutory Trust Act is a 2010 statute that was passed in D.C., so you've got to look at both of those. If you really step back for a moment, if you step back for a moment, what the appellees are saying is that this court should engage in an artificial exercise of trying to determine the citizenship of something that doesn't exist. If this was a contract case and the plaintiffs had sued the counterparty of the contract and had also sued the contract dated January 1, 1985, we wouldn't all be sitting here trying to figure out what is the citizenship of a contract because a contract is not a legal entity. A contract defines a relationship between the parties, and there's all sorts of law about what a contract is and what it means, but it's not an entity. Just because something is sued, we don't then have to engage on some sort of artificial exercise to determine what its citizenship might be, and that's exactly why the Supreme Court made the distinction that it made between traditional trusts, which are fiduciary relationships, and artificial entities that exist under state law. And frankly, that's why the Carden rule does apply to artificial entities because they are akin to LLCs or limited partnerships. I'm just curious as to why, I mean, this is largely a problem of your own creation. I mean, you filed the complaint, I mean, you personally, but your client filed this complaint and named the trustee, the trusts themselves as dependents. Yeah, certainly. Couldn't it just have been fixed a long time ago by an idea of the complaint? Well, that opportunity hasn't happened, and we can fix it today by simply dismissing them as a dispensable party. My adversity, in retrospect, sure, we wouldn't have sued the trust. Was the Mattadue case in 2011 available in 2010? No. Had the Statutory Trust Act, was that available in 2010? I don't believe so. Mr. Cambridge is a trustee for both? Yeah, for Newmarty U.S. Trust. The foundation is? It's a beneficiary. Yes, it's a beneficiary. I'm sorry? You don't dispute that the foundation is appropriately before the court? Is the foundation distinctly going to? Yes, it is. Okay. Yes, it is. The diversity was destroyed by the BVI members of Newmarty U.S. Trust. So, just to conclude, because I see I'm running out of time, I reserve some time for rebuttal. There are other cases that have looked at this issue. It's been a very short period of time since AmeriCorps came out, but there are at least two cases from both in Texas. Texas is somewhat of an anomaly because, in Texas, a trust must be a dependent for whatever reason. So, I'm sure there will be more cases along those lines. And the case is Juarez v. DHI Mortgage Company, 2016, Westlaw 3906296. That's from the Southern District of Texas on July 19, 2016. And in Juarez, the court, the district court, adopted precisely the analysis that I'm advocating for, which is that you first have to look to the type of trust being sued, suing or being sued. Then further analysis is required to determine whether the trust is a traditional trust, where one only looks to the trustee for citizenship, or a business entity where one must look to all the members. That's AmeriCorps. And similarly, Wells Fargo Bank v. Transcontinental Realty, 2016. I'm just curious. You said the Texas state law requires that the trust be named as a party. Yeah, it's an anomaly of Texas law. But does that mean that Texas law means that such trusts can soon be sued? No, they can't. And, in fact, in this particular case. Well, how can – I mean, it's a question of Texas law. And if Texas law says you must be a dependent, then isn't that a statement by Texas law that you can be sued? No. And the court goes through and says, in fact, you need to look. And for the jurisdictional analysis, you have to figure out – I mean, obviously, if they're required to be a defendant, they can be sued, right? But it's not an artificial entity. And they say you still have to look to see is it an artificial entity, is it a traditional trust. Again, it's not – it doesn't fit perfectly, obviously, with the D.C. Code, with the regime we have here. But it's at least some indication that two courts have adopted precisely the analysis that we say AmeriCorps requires for what they're worth. Can I ask you about what AmeriCorps requires? This sentence that is so awkwardly worded. Yes. I can read it for you. No, I've got it. You've got it for you. Do you consider that a holding or dicta? I consider it a holding. Why? Because I think what they're trying to do is they're trying to contrast traditional trusts.  And Judge Sotomayor was trying to clean up all of the cases that are all over the place. The trust before that court was the REAP. That's correct. But I think it's not dicta because I think the court was trying to reconcile those cases that frankly hadn't considered whether the trusted issue was an artificial entity or was a traditional trust. And she's trying to kind of clean up the authorities that are all over the place on this. Frankly, you could find an authority for any proposition and say you really have to figure out is this an entity that has the attributes of citizenship for purposes of diversity or is it not? And if this is dicta, then she goes into precisely why AmeriCorps is an artificial entity and why it matters. So I think it sets up the whole analysis for why artificial entities like AmeriCorps need to be remembered. Believe it, it's dicta. We follow it. There you go. All right. Thanks. I'll give you some time in reply. Mr. Sloan? If it may please the court, I'm Clifford Sloan for Appellees. I'd like to make four very brief points at the outset and then address some of the points that my colleague raised. First, it is well established that plaintiff is responsible for his or her complaint and that plaintiff has the burden of pleading and establishing jurisdiction. Second, in the district court, from beginning to end, plaintiff adamantly maintained that New Mighty U.S. Trust was an important and appropriate defendant and never suggested that it was unimportant, nominal, or dispensable, or that it lacked legal capacity or legal existence. Third, Judge Boasberg, on the basis of the pleadings and submissions before him, appropriately and correctly determined that plaintiff had not carried his burden of establishing jurisdiction. And fourth, if this court decides to entertain plaintiff's new theory of jurisdiction, which he never raised below and which is fundamentally inconsistent with his submissions in the district court. Can I just read you something? I don't understand this argument you're making at all. On page 6, the district court says, Plaintiff's allegation that the trust is a citizen of Virginia, D.C. though appears to assume that the citizenship of the sole trustee, Clearbridge, a citizen of Virginia, D.C., determines the citizenship of the trust. Indeed, she argues as much in her opposition to the instant motion. How can you say she didn't argue in the district court that whether she wants the trust there or not, for purposes of diversity of citizenship, it is the trustee that counts? Very important question here. Because there's no question that that's what plaintiff argued, but on very, very different grounds. And let me go through this. Different grounds because the Supreme Court came in and started chopping up the lines. No. People do that. The argument that you look to the trustee for purposes of determining diversity of jurisdiction is right here. At least that's what Judge Boasberg is telling us. Right. And plaintiff's argument on this, and the entirety of their argument is that joint appendix 318 to 322, that's their opposition to the motion to dismiss, was that there is a broad rule with trusts, that whenever a trust is the entity, you follow Navarro and the citizenship of the trustee. And defendants said, no, when the trust is the entity, you look at Cardin and all the members rule. And Judge Boasberg carefully considered the cases on both sides and said when the trust is the entity, Cardin controls. Both of you had to refine your positions post-America. Making new arguments in light of the Supreme Court precedent is absolutely permissible, and it would be crazy not to do it. I don't understand your waiver given that you told me that. Well, I'm happy to address the argument on its terms, Your Honor. But I do think, let's step back for a second. The new argument that Plaintiff is raising is essentially that new U.S. trusts lack legal capacity and legal existence. You heard the core of his argument. The core of his argument is that we have diversity of jurisdiction because the trust has that status, we must look to the trustee. And this is a jurisdictional argument, and they said from beginning to end, let's look at the trustee. And the fact they've refined their arguments is what anyone, you've refined yours post-America. Well, Your Honor. Let's just get to the merits here. The waiver thing doesn't, right? Okay, well, let me. What was your fourth point? My fourth point was that if we get to the merits, that Plaintiff's new theory of jurisdiction, as we see it, but their argument here in any case, is deeply wrong and that in contrast to Plaintiff's theory and Plaintiff's reading of Americold, we would submit that as the Supreme Court confirmed in Americold, there is a very clear, bright line across the board rule, namely, that it is the named party that controls. And so if a trust is named, then all the members' rule of Carden applies. And if a trustee is named, then the citizenship of the trustee rule of Navarro applies. That is very clear and readily ascertainable, lines up perfectly with Americold and with the Supreme Court principle in cases like Hearst Corporation versus Friend, that jurisdictional determinations should be, as the Supreme Court said there, as simple as possible, as clear as possible. All you have to do is look at the named party and, of course, the Plaintiff is responsible for the complaint. Now, Plaintiff's theory, in contrast, although he says, oh, it would be a simple test, it would plunge courts into chaos because it would require not simply looking at the caption, as our test would do and as we think is confirmed in Americold, but instead it would require courts to undertake an independent inquiry in terms of categorizing trusts above and beyond whether they're in the complaint. And he suggests that, well, it's a very simple sort of binary test of whether it's a statutory trust or what he calls a traditional trust. In fact, it is an extremely complex undertaking of categorization. Your Honor's questions were getting at that in terms of what are the different characteristics. And this very case illustrates the complexity in contrast to what my friend was saying. He was emphasizing Title 29 of the D.C. Code, which is the Uniform Statutory Trust Entity Act adopted in 2011. He's entirely overlooking the significance of Title 19 of the D.C. Code, which is the Uniform Trust Code with significant D.C. variations. It was enacted in 2004, shortly before this trust was created in 2005. And Title 19 has provisions that completely belie and contradict his suggestion that it's some easy sorting of traditional trusts and statutory trusts. And let me give the Court two examples of this. One is that under Title 19, under the definition of person, a trust is defined as a person. He said, oh, a characteristic of a common law trust. It's not a person. Well, in the Code section 19-1301.03, parentheses 11, and there's no dispute that Title 19 applies to this trust, the trust definition, the definition of person includes a trust. Here's another provision, which completely belies the point that he was making, and that is that this is a provision which reflects a very significant D.C. variation from the Uniform Trust Code. Very few jurisdictions have this. Under Title 19, a trust can hold property. That's section 19-1304.18. He says it's like suing a contract. Well, the fact that it can hold property and that that is a significant decision by the district that is somewhat unique to the district completely belies this sort of simple sorting that he's making. Now, one point I want to emphasize is that these characteristics under Title 19 and those different characteristics, those don't matter for our theory because our theory is, again, you simply look at the caption of the case and you don't have to get into, for purposes of diversity, you don't have to get into some complicated, attempted categorization of trusts, and there are thousands of different trusts. States treat them very differently. So I get that. I get that there's complexity. It would be nice to have a simple rule, but there are complexities on the other side as well. How does one identify who the members of a trust like this are? Some of this was discussed in AmeriCorps, and they just said, hey, we're going to have to deal with it, but how would we decide who the members of a charitable trust are when we make enrollment donations? Two answers, Your Honor. First of all, in this case, it's very easy because there are three named beneficiaries, as Judge Boswer got to say. Are more intended? Well, there could be more who get distribution, but for purposes of resolving the diversity here, there are three that are named in the trust instrument. They're in paragraphs 122 and 123 of the complaint. I get that, but your argument was about the legal rule. Yes, Your Honor. There's complexities there, and I think you have all the complexities and challenges, some of which were surfaced in the AmeriCorps opinion itself of some trusts are going to have hundreds, thousands, millions probably of members. And that was explicitly raised in AmeriCorps by the petitioner and emphasized at the oral argument, and the Supreme Court said in the oral argument and said in the opinion, that's the rule. You know, that's the consequences of the rule of the all-members rule of Carden, and if Congress wants to address it as it did with corporations, it can't. And, again, this also takes the place against a backup where there's a presumption against diversity jurisdiction, and for reasons of limited jurisdiction, for reasons of federalism, a presumption against expansive rules of diversity. Let me also point out that in the Third Circuit, which is the leading case on this, Emerald Investors, and it's one that Judge Boasberg relied on, but in Emerald Investors, the court said that the test should be trustee plus beneficiary. It's both for a trust. And so in that situation, plaintiff raises in this brief the specter of, oh, how would you know if there were unknown ones? You can always look at the trustee and if the other beneficiaries are unknown. And as Judge Boasberg also points out, jurisdiction is determined on the day the complaint is filed. So there's a finite time of the jurisdiction there. But it was pointed out in the oral argument in Emerald in response to questions from Justice Scalia that there are REITs that have millions of beneficiaries, and the Supreme Court in the title quiz said, well, that's the consequence of the all-the-members rule. But the important point is that it's the determination of what entity you're looking at, what entity you're counting for purposes of diversity, and the rule that flows for that. Under our test and the Supreme Court's test, numerical, and I want to explain a little more about that in a moment, but it's very clearly all you have to do is look at the caption, and so that lines up perfectly. The Supreme Court says, for a traditional trust, therefore, there is no need to determine its membership, and then comma, as would be true if the trust as an entity were sued. The first part of that sentence, for a traditional trust, if you fall within the category of a traditional trust, there is no need to determine its membership. So, and I think it's important to look at this discussion in context. There's part three of the opinion, the four paragraphs of the opinion. So, first of all, that sentence, I mean, even just the sentence, as Your Honor was mentioning, the syntax that we've all looked at, but it does say, as would be true if the trust as an entity were sued. So, again, it's pointing to the entity that were sued. But more to the point of your question, Your Honor, it's coming right after a discussion about the fact that traditionally, historically, it's talking about a classic sort of early 19th century trust where person A gives property to person B for the benefit of person C. And it's explaining that traditionally, the trustee was the entity, was the person that was sued, not the trust. It's giving that historical explanation. But this is also part of a broader discussion in part three. And in that discussion, no fewer than six times does the Supreme Court emphasize the entity that is named. That's really the thrust of that section. And the discussion about the traditional trust is in the context of explaining why it was traditionally the trustee that was sued. And, indeed, the penultimate sentence of that section, which is on page 1017, 136 S. We therefore decline to apply the same rule to an unincorporated entity sued in its organizational name, in its organizational name, that applies to a human trustee sued in her personal name. Again, the key distinction that the court is making in that sentence, the part that that sentence is part of, is this distinction between whether a trust is named or a trustee is named. And, you know, plaintiff's suggestion about lack of legal capacity and lack of legal existence would import into the diversity analysis wholly separate concerns, which are very complicated in their own right. And, for example, Rule 9A requires that if a party is challenging a lack of legal existence or a lack of legal capacity, it must be specifically pleaded and denied. And so to our earlier point, Your Honor, that's something they never did under Rule 9A. I mean, that's the point we were making, that if there's an issue about legal capacity and legal existence, which is the heart of their argument now, it's pages 32 to 42 of their opening brief. If there's an issue about lack of legal capacity or legal existence, first of all, we don't think that's not the diversity analysis. They're trying to glom it on and say, aha, Mericold means that, you know, a diversity inquiry, that the interpretation of the diversity statute now requires some analysis of lack of legal capacity and lack of legal existence. No, and the plaintiff has control over the complaint. But there is a process for that under the federal rules, and it's 9A. And that's where it's very, very telling that they never made that objection about legal capacity or legal existence under Rule 9A in the district court. And yet that's the heart of their theory in this case. And there's no, you know, intervening Supreme Court case that justifies that. Mericold does not justify that. And, Your Honor, this idea that Mericold played some significant role that would justify a difference or a refinement in their theory, you know, plaintiffs in their brief emphasize their amicus brief to the Supreme Court in Mericold. Well, if they wanted those arguments, which are all about traditional trust and lack of legal capacity and lack of legal existence, if they wanted those arguments to have a bearing on this case, they should have made them to Judge Boasberg. They were fully available to him. They made them to the Supreme Court in the Mericold amicus brief. And I would ask the court to compare their amicus brief in Mericold to their submission at Joint Appendix 318 to 322. I just wanted to – Mericold, we've covered this, but Mericold clears up what the court itself describes, the confusion that was in the law beforehand. But not on this issue, Your Honor. But in any case, I don't want to belabor the point. I just wanted to make sure the court understood our argument in particular. Yeah, I understand the argument, but it is also true, I think, that Mericold arguably resets some of this and in the midst of a paragraph tries to clean it up now. We wouldn't be discussing this. Right. And as I was saying, we do strongly disagree with their reading of Mericold. But I'd like to also just address a couple of other points. All right. Do so quickly. Okay. I'll do it very quickly. First of all, the plaintiff emphasized the case of Nitishku, the 2011 case that he was talking about, the D.C. Superior Court case. I think it speaks volumes that that is the only authority that he has. Not only is it a single D.C. Superior Court case. If you read the case, it's about Delaware trusts. And it does not consider the provisions of Title 19 of the D.C. Code, such as the fact that a trust is a person or that a trust can hold property. And secondly, just very briefly, Your Honor, the plaintiff suggested, as he suggested in the brief, that this court could simply say that the trust is a dispensable party and order it dismissed. We strongly disagree with that. In Newman Green, the Supreme Court said that that's a sparing authority for appellate courts. We think this would be an exceptionally inappropriate case for the use of that sparing authority, both because of the procedural history and posture of the case, because we think it would lead to substantial prejudice. And finally, because we strongly disagree that New Lady U.S. Trust is, in fact, a dispensable party. And in conclusion, Your Honor, we respectfully submit that Judge Boasberg's adjudication in the case of – Can I ask just one quick thing on substitution? Oh, sure. I assume you agree with him that even if an substitution were made, it wouldn't affect in any way your ability to make all your capacity arguments? Well, we certainly think it would be important that we would be able to make all of those arguments. Now, as we've said in the briefs, we believe there are cases that there can't be substitution when the case was a nullity in the first place. If the court affirms – That's why it's a nullity because the plaintiff was dead before the suit was filed, which isn't the problem here. Well, but there are also cases, Your Honor, where the court has said in the Meredith case, for example, from the Second Circuit, that because there wasn't authority to file it in the first place, it was a nullity. Not only from death, but it went directly to authority. And so as a result – and if the court were to affirm that there's no jurisdiction, there's no need to reach that issue. However, if the court were to take an action other than affirmance, then the court would have to reach this, and our position would be that there should not be the substitution because there wasn't authority in the first place and it was a nullity. But at the very least, we would think it should be very, very clear that if the court were inclined to grant the motion for substitution, that it does not affect any of the other issues. Thank you, Your Honor. All right. Thank you. Does Mr. Soutenberg have – he has no time. All right. Why don't you take two minutes? I can be briefer than that. On the waiver point, I think it's important to look at what the district court wrote. This is at JA663. First of all, he talks about our argument about open versus closed class beneficiaries. And he goes on to say, in addition, plaintiff cites no authority in support of her broader argument that an applying card in the court should distinguish among different kinds of trusts. Judge Boasberg cited to Emerald Investors footnote 10. If you look at note 10 of Emerald Investors, the court wrote, our research has not led us to conclude that the type of trust calls for a difference in treatment when determining a trust citizenship for diversity of citizenship jurisdictional purposes. He goes on to say, the cases cited by defendants do not support its contention calling for different treatment based on different type of trust. This precise argument was considered by the district court. Of course, we refined our arguments and expanded them. We have a lot more pages to do so in a motion to dismiss when you're dealing with, you know, all sorts of issues and you have to focus your arguments. And here we were able to spend a lot of time on a particular issue. And, of course, we have AmeriCold, which does change the landscape and does change the analysis. This footnote is wrong now. It's completely, it's incorrect. And Judge Boasberg was incorrect to rely on. As a matter of procedure, what should happen now in future cases when a traditional trust is named as a defendant? Well, in that scenario, if someone makes a mistake based on precedent and now decides to do that, I think you simply, it's a look through. You look to the trustee because they are a nominal party and they don't alter the jurisdictional analysis. I listened very closely to my colleague's arguments. Just to be clear, so you're saying the trustee would be the real party in interest? Is that how you would look at it? Yes, absolutely. The trustee is what matters. And you might have a problem if you sue a trustee and you don't sue the trustee. I could see there being real difficulties in that scenario. But if you have the trustee as a defendant, I think you look through the trust. If you sue the trustee and the trustee, you're saying. Yeah, absolutely. But if you just name the trust and it's a traditional trust. I think you've got a problem. I think you've got a serious problem as a plaintiff. But it's easily fixed. I mean, depending on the timing of when you fix it to name the trustee. And that happens all the time where parties mistakenly sue a trust and the trustee appears and says it's substituted in. I listened very closely to my colleague's arguments about the new mighty U.S. trust, which is the trust at issue here. I didn't hear him contend that it's an artificial entity or a statutory trust. So Carden doesn't apply. So we're left back in the situation, well, if you're not an artificial entity, you're back in this other category of traditional trust. And I recognize the Supreme Court wasn't trying to define what a traditional trust was across all the states and across all the jurisdictions. But the trust here is very simple. And it doesn't rise to the level of something that requires us to engage in that kind of jurisdictional analysis. You read the Mericold, I think, to say a traditional trust may not be sued. I read it to say yes because I read it to say the court is saying it's all about the trustee. It would have been nice if they said that, though. It's all about the trustee. Yes, I agree. And you're getting that out of that sentence, right? I'm getting it out of that sentence and the entire paragraph before it where the court is trying to say, you know, what does it say? It can't be sued. It's not a distinct legal entity. It could not be hailed into court. Legal proceedings involving a trust were barred by or against the trustees in their own name. Well, not always. But then the sentence that you were discussing earlier where it says for a traditional trust, the sentence at issue, the word entity there does not refer to a traditional trust. It doesn't. Everywhere the word entity is used in this opinion, it is referring to a distinct legal entity. It should say as would be true if the trust as an entity could be sued. Right. Exactly. Or she's now segueing into the next paragraph. There's a big difference between were and could be. You know, I actually don't think it makes a difference because I think if you read this sentence going into the next paragraph, she's now saying now let's look at artificial entities that happen to call themselves trusts. So calling a trust an entity or just calling it a trust doesn't make it a traditional trust. What is your position on whether it's a Title 19 trust under the D.C. Code? Well, it's definitely not a statutory trust. So it is a Title 19 trust. Okay. Unless there are any further questions. All right. Thank you.
judges: Henderson, Kavanaugh, Millett